UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARY PETER WILLIAMS, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> _____ ) | CASE NO.   C07-1184-RSL-JPD <br> (CR03-493-RSL) <br><br> REPORT AND RECOMMENDATION |

<u>INTRODUCTION AND SUMMARY CONCLUSION</u>

Petitioner Gary Peter Williams is a federal prisoner who is currently incarcerated at the Lompoc Federal Prison Camp in Lompoc, California. He has filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct the sentence imposed upon him following his 2005 convictions on federal charges of bank fraud and of conspiracy to produce false identification, commit identity theft and commit bank fraud. Respondent has filed a response to petitioner's § 2255 motion and petitioner has filed a brief in reply. After careful consideration of petitioner's motion, the briefs of the parties, and the balance of the record, this Court concludes that no evidentiary hearing is required and that petitioner's §2255 motion should be denied.

REPORT AND RECOMMENDATION
PAGE - 1

BACKGROUND

On November 19, 2003, the grand jury returned an indictment charging petitioner Gary Williams and ten co-defendants with thirteen counts of bank fraud and one count of conspiracy to produce false identification documents, commit identity theft and commit bank fraud. (CR04-493-RSL, Dkt. No. 41.) On May 6, 2004, petitioner entered a guilty plea to one count of bank fraud. (*Id.*, Dkt. No. 162.) Petitioner entered his plea pursuant to a plea agreement in which the parties agreed that the appropriate imprisonment range was 151 to 188 months for the offense to which petitioner was pleading guilty and for all relevant conduct under § 2B1.1 of the United States Sentencing Guidelines. (*Id.*, Dkt. No. 163.)

On July 26, 2004, petitioner moved to withdraw his guilty plea on the grounds that he would not have entered his plea if he had known of his Sixth Amendment right "to litigate aggravating sentencing issues to a jury and to require the government to prove any aggravating sentencing issues beyond a reasonable doubt." (*See id.*, Dkt. No. 220 at 3.) Petitioner's motion to withdraw his guilty plea was granted on September 8, 2004. (*Id.*, Dkt. No. 241.)

On January 5, 2005, the grand jury returned a superseding indictment which charged the same thirteen counts of bank fraud, and essentially the same conspiracy count, but added sentencing enhancement factors that the government intended to pursue at sentencing. (*See id.*, Dkt. No. 299.) On February 24, 2005, petitioner entered guilty pleas, pursuant to a new plea agreement, to one count of bank fraud and to one count of conspiracy to produce false identification documents, commit identity theft and commit bank fraud. (*Id.*, Dkt. Nos. 319 and 320.) As a part of his plea agreement, petitioner admitted that certain provisions of the Sentencing Guidelines applied to him, three of which would result in increases to petitioner's total offense level. (*Id.*, Dkt. No. 320 at 7-8.) The plea

REPORT AND RECOMMENDATION
PAGE - 2

agreement also identified three sentencing issues the parties would be free to argue at sentencing; *i.e.*; the proper amount of loss, petitioner's role as an organizer and leader of the conspiracy, and petitioner's qualification for a three-level reduction for acceptance of responsibility. (CR03-493-RSL, Dkt. No. 320 at 8-9.)

Prior to sentencing, the United States Probation Office prepared a presentence report. In addition, the parties submitted briefs to the court on the issues of the applicable burden of proof at sentencing and petitioner's confrontation rights at sentencing. (*Id.*, Dkt. Nos. 321, 322, 323, 331, 335, and 338.) Petitioner's sentencing hearing was held on April 19, 2005. (*Id.*, Dkt. No. 357.) Because of the nature of the contested issues, the proceeding began with an evidentiary hearing. (*Id.*, Dkt. Nos. 357 and 367.) Prior to taking testimony, the court advised the parties that it would be applying the preponderance of the evidence standard to the fact-finding it would engage in for purposes of the sentencing proceeding. (*Id.*, Dkt. No. 367 at 2-3.)

The government presented the testimony of four witnesses at the hearing: a Seattle Police Department detective involved in the investigation of petitioner's case, two of petitioner's co-defendants, and an FBI financial analyst. (*See id.*, Dkt. No. 367.) After hearing the testimony, and arguments from counsel, the court found that the government had proven by clear and convincing evidence that petitioner was the leader of an organization of more than five individuals involved in a criminal enterprise. (*See id.*, Dkt. No. 367 at 166.) The court also found that the loss amount was over one million dollars and that petitioner was not entitled to more than a two-point reduction for acceptance of responsibility. (*Id.*, Dkt. No. 367 at 166-167.)

The court then concluded, based upon these findings, that petitioner's offense level was 30, and his criminal history category was III, which resulted in an advisory guideline range of 121 to 151

REPORT AND RECOMMENDATION
PAGE - 3

months.  (CR03-493-RSL, Dkt. No. 367 at 167.)  After considering various mitigating and aggravating factors, the court imposed a sentence in the middle of the guideline range, 136 months. (*Id.*, Dkt. No. 367 at 174-176.)  The court also gave petitioner credit for ten months served in state custody as provided for in petitioner's plea agreement.  (CR03-493-RSL, Dkt. No. 367 at 176.)  On May 9, 2005, the court issued a sentencing order in which it clarified the findings made at the April 19, 2005, hearing.  (*Id.*, Dkt. No. 364.)

Petitioner filed a timely notice of appeal, and petitioner's appointed appellate counsel filed an opening brief which identified the following six issues for review:

> 1.  Did the district court apply an unconstitutional burden of proof at the sentencing hearing, by failing to require the Government to prove all non-admitted facts alleged to increase the offense level beyond a reasonable doubt?
>
> 2.  Did it violate Williams' rights under the Confrontation Clause to allow the Government to rely on hearsay evidence to prove facts alleged to increase the offense level, when that evidence would not have been admissible at a jury trial?
>
> 3.  Even if a preponderance burden of proof applied, did the Government fail to prove that the loss amount was over $1 million, and should Williams' sentence be reduced accordingly?
>
> 4.  Did the Government fail to prove by a preponderance of the evidence that Williams' sentence should be enhanced for a leadership role?
>
> 5.  Did the district court fail to make adequate findings explaining why Williams was not eligible for a third point off for acceptance of responsibility?  Should the offense level be reduced by a third point?
>
> 6.  Was the sentence imposed by the district court unreasonable for numerous reasons, including: giving too much weight to the loss amount, increasing punishment both for role in the offense and the loss amount, imposing a sentence disproportionate to the sentence of the co-defendants, over-weighing criminal history, failing to consider the defendant's age and ill health, and imposing a sentence that fails to serve the purposes of 18 U.S.C. § 3553(a)?

*United States of America v. Williams*, 2005 WL 4655537, at *2-4.

REPORT AND RECOMMENDATION
PAGE - 4

Petitioner's counsel also filed a reply brief which identified the following six issues in reply:

1. Even though post-*Booker* sentencings do not require a jury, do they nevertheless require application of the beyond a reasonable doubt burden of proof?

2. Does *Crawford's* emphasis on cross-examination as the constitutional means of assuring reliability apply to sentence enhancement facts, when the procedures used to determine those facts substitute for a jury trial pursuant to *Blakely* and *Booker*? Was non-cross-examined hearsay reliable enough to support the sentence enhancements on the record of the case at bar?

3. When a grossly inflated loss amount is not based on a true "estimate" of the loss nor on evidence of a loss amount that was "intended," should it be rejected and a lower sentence ordered?

4. Was the district court's reference to Kenya Hall's testimony in isolation from the rest of the record, combined with the lack of findings about who Mr. Williams directed, if anyone, sufficient to satisfy Rule 32's requirement of findings on the disputed facts regarding leadership role?

5. Was the sentencing court required to award a third point for acceptance of responsibility, when the criteria for it were met and the sentencing court did not reject it based on lack of timeliness?

6. Should a presumption of reasonableness of the sentence be rejected, and should Mr. Williams' sentence be found unreasonable in light of the Section 3553(a) factors?

*United States of America v. Williams*, 2006 WL 3032635, at *1-2.

On October 16, 2006, the United States Court of Appeals for the Ninth Circuit issued an unpublished memorandum opinion affirming petitioner's sentence. *United States of America v. Williams*, 203 Fed. Appx. 782 (9th Cir. 2006) (unpublished). Petitioner's counsel thereafter filed a petition for panel rehearing with a suggestion for rehearing en banc. (*See* Dkt. No. 3, Ex. F.) On December 15, 2006, the Court of Appeals issued an order denying the petition for panel rehearing and the petition for rehearing en banc. (CR03-493-RSL, Dkt. No. 409.)

Petitioner now seeks to vacate his sentence under § 2255. Petitioner asserts two grounds for relief in his §2255 motion: (1) he was denied the effective assistance of appellate counsel when counsel

REPORT AND RECOMMENDATION
PAGE - 5

failed to raise meritorious issues on direct appeal; and, (2) petitioner's sentence is unconstitutional because it was based on enhancements that were not proven beyond a reasonable doubt. The government has filed a response to petitioner's motion and this matter is now ripe for review.

## DISCUSSION

### Ineffective Assistance of Appellate Counsel

Petitioner asserts in his first ground for relief that his appellate counsel rendered ineffective assistance when she failed to raise the following three issues on appeal: (1) the district court failed to make a factual finding on how much the charged conspiracy subjectively intended the fraud victims to lose; (2) the district court failed to make factual findings regarding petitioner's eligibility for a third acceptance of responsibility point; and, (3) the district court failed to resolve factual disputes concerning the leadership role enhancement. (*See* Dkt. No. 2 at 1-2.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness and, (2) that any deficiencies in counsel's performance were prejudicial to the defense. *Strickland*, 466 U.S. at 688, 691-92.

When considering the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id.* The Ninth Circuit has made clear that "[a] fair assessment of attorney performance requires that every effort by made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and

REPORT AND RECOMMENDATION
PAGE - 6

to evaluate the conduct from counsel's perspective at the time." *Campbell v. Wood*, 18 F.3d 662 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. *Strickland*, 466 U.S. at 693. The petitioner must demonstrate that it is reasonably probable that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*.

1. <u>Failure to Make Findings as to Actual Loss</u>

Petitioner asserts that his appellate counsel rendered ineffective assistance when she failed to challenge on appeal the district court's failure to make any factual findings as to how much financial loss petitioner and his co-defendants subjectively intended to inflict on their victims. Petitioner maintains that he would have prevailed on appeal had counsel made this argument. Petitioner is correct that counsel did not make the precise argument petitioner believes should have been made. However, petitioner fails to establish that the argument he advocates here would have been a winner on appeal.

The Sentencing Guidelines provide that, in cases involving fraud, loss is calculated using the greater of the actual loss or the intended loss. USSG § 2B1.1(b)(1), cmt. n. 2(A) (2002). Based upon the evidence presented at petitioner's sentencing hearing, the district court concluded that the actual loss attributable to the conspiracy, of which petitioner was found to be an organizer and leader, was in excess of $1 million. (*See* Dkt. No. 16, Ex. 3 at 3.) This conclusion was somewhat at odds with the evidence presented by the government at petitioner's sentencing hearing which suggested that the

REPORT AND RECOMMENDATION
PAGE - 7

actual loss suffered by the victims of the conspiracy was slightly over $850,000.  (*See* CR03-493-RSL, Dkt. No. 367 at 137-138.)  Thus, on appeal, petitioner's counsel argued that the record did not support the conclusion that there was over $1 million in actual loss. (Dkt. No. 16, Ex. 4 at 19-20.) Petitioner's counsel also argued that any intended loss calculation should be based upon the defendant's actual intent and should not be deemed equivalent to exposure loss. (*Id.*)  The purpose of the latter argument was to establish that the loss amount should have been lower under either an actual loss standard or an intended loss standard. (*See* Dkt. No. 3-4 at 51.) These arguments were entirely reasonable in light of the record.

Petitioner's suggestion that counsel should have challenged the district court's failure to make factual findings regarding the subjective intent of petitioner and his co-defendants is not reasonable. First, because the Court concluded that there was over $1 million in actual loss, petitioner would not have benefitted from any finding that the intended loss amount was lower.  Second, petitioner presented no testimony at the sentencing hearing regarding his subjective intent nor was there any argument made at the sentencing hearing that the loss amount should be based on the subjective intent of petitioner and his co-defendants.  Thus, the trial court's failure to make any findings with respect to this point did not present any viable issue for appeal.  Accordingly, the first part of petitioner's ineffective assistance of counsel claim is without merit and should be denied.

2.  <u>Failure to Make Factual Findings as to Denial of Third Acceptance Point</u>

Petitioner next asserts that his appellate counsel rendered ineffective assistance when she failed to challenge on appeal the district court's failure to make factual findings as to the timeliness of petitioner's guilty plea before denying him a third point for acceptance of responsibility.  Petitioner is correct that counsel did not challenge the district court's failure to make factual findings as to the

REPORT AND RECOMMENDATION
PAGE - 8

timeliness of his guilty plea. Counsel argued instead that petitioner had satisfied all of the criteria for the third point and that the district court erred in concluding that petitioner was ineligible for the additional point.

Petitioner relies on the Ninth Circuit's decision in *United States v. Colussi*, 22 F.3d 218 (9th Cir. 1994), to support his assertion that counsel made the wrong argument on appeal with respect to the acceptance of responsibility issue. In *Colussi*, the Ninth Circuit addressed the then recently amended § 3E1.1 of the Sentencing Guidelines which provided for an additional one-level adjustment for early acceptance of responsibility. The court held there that the district court erred in denying the defendant's request for an additional one-level reduction in his offense level for early acceptance of responsibility based on the court's belief that the award of such an adjustment was discretionary. *Colussi*, 22 F.3d at 219-220. The court made clear that when a defendant meets all of the requirements of § 3E1.1(b), the award of an additional point for acceptance of responsibility is mandatory not discretionary. *Id*. The Ninth Circuit then remanded the matter back to the district court as the record lacked the necessary factual findings for the appellate court to determine whether the defendant had met all of the requirements of §3E1.1(b). *Id*. at 221.

Petitioner asserts that under *Colussi*, the district court in his case was required to make factual findings as to the timeliness of his guilty plea. However, the Ninth Circuit, in *Colussi*, merely reiterated the well established rule that the district court must resolve disputed sentencing issues. *Id*. at 220. The timeliness of petitioner's guilty plea was not in dispute. In fact, though the plea agreement preserved for petitioner the right to argue for an additional one-level adjustment at sentencing, petitioner's counsel made no such argument either in the various memoranda submitted to the court prior to the sentencing hearing nor at the sentencing hearing itself. In light of this record, the

REPORT AND RECOMMENDATION
PAGE - 9

court was only required to make findings as to whether petitioner met the requirements of § 3E1.1(b). The district court concluded that petitioner had not met those requirements because he did not admit to all relevant conduct surrounding the offense. (*See* Dkt. No. 16, Ex. 3 at 3-4.)

Petitioner's counsel reasonably argued that petitioner satisfied all of the criteria for the third point and that the district court erred in concluding that petitioner was ineligible for the third point. Any argument that the district court failed to make factual findings with respect to an issue that was not even in dispute would not likely have prevailed on appeal. Accordingly, the second part of petitioner's ineffective assistance of counsel claim is without merit and should be denied.

3.   <u>Failure to Resolve Factual Dispute re: Leadership Role Enhancement</u>

Finally, petitioner asserts that his appellate counsel rendered ineffective assistance when she failed to challenge on appeal the district court's failure to resolve factual disputes relating to the sentence enhancement imposed for petitioner's role in the offense, as required by Fed. R. Crim. P. 32(c). Petitioner acknowledges that counsel made a related argument on appeal; *i.e.*, that the evidence in the record did not support the role enhancement. He also acknowledges that counsel made the Rule 32 argument he advocates here in her reply brief on appeal. He argues, however, that the argument came too late to be considered by the Court of Appeals.

Petitioner correctly notes that the Court of Appeals "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *In re Riverside-Linden Investment Co.*, 945 F.2d 320, 324 (9th Cir. 1991) (citing *Miller v. Fairchild Industries, Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). In its opinion affirming petitioner's sentence, the Court of Appeals made no specific reference to the Rule 32 issue and, thus, it is unclear whether or not the court specifically considered that argument. Nonetheless, the Court of Appeals clearly believed that the

REPORT AND RECOMMENDATION
PAGE - 10

record was sufficient to resolve the issue of whether evidence offered at the hearing supported the role enhancement. *See Williams*, 203 Fed.Appx. at 784. Petitioner has demonstrated neither deficient performance nor prejudice with respect to this final portion of his ineffective assistance of counsel claim and the claim should therefore be denied.

### *Booker* Claim

Petitioner asserts in his final ground for relief that his sentence is unconstitutional under the United States Supreme Court's decisions in *United States v. Booker*, 543 U.S. 220 (2005), and *Cunningham v. California*, 127 S. Ct. 856 (2007), because the district court impermissibly enhanced his sentence beyond the prescribed statutory maximum and beyond the advisory sentencing guideline range based upon facts that were neither admitted by him nor proven beyond a reasonable doubt. The government argues that petitioner's *Booker* claim was decided on direct appeal and there have been no intervening changes in the substantive law which would entitle him to review in these proceedings. The government is correct.

As noted above, the district court, prior to sentencing, advised the parties that the preponderance of the evidence standard would be the standard applied to the fact-finding undertaken for purposes of determining petitioner's sentence. On appeal, petitioner's counsel argued that the district court applied an unconstitutional burden of proof at the sentencing hearing by not requiring the government to prove beyond a reasonable doubt facts used by the judge to increase the sentence beyond those established by the guilty plea. The Court of Appeals concluded that this contention was foreclosed by its prior holding in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005).

Petitioner asserts in these proceedings that the United States Supreme Court's decision in *Cunningham,* which was issued after petitioner was sentenced, and after his appeal had concluded,

REPORT AND RECOMMENDATION
PAGE - 11

undermines the Ninth Circuit's decision in *Ameline* and entitles him to immediate release from custody or, in the alternative, a new sentencing hearing. Petitioner is mistaken.

In *Cunningham*, the Supreme Court considered the constitutionality of California's determinate sentencing law ("DSL"). The defendant in *Cunningham* was tried and convicted of continuous sexual abuse of a child under the age of 14. *Cunningham*, 127 S.Ct. at 860. Under the DSL, the defendant was subject to one of three possible sentences for his offense: a low term of 6 years, a middle term of 12 years, or an upper term of 16 years. *Id*. The trial judge was required by statute to impose a middle term sentence unless the judge found facts in aggravation or mitigation which would justify imposition of a lower term or upper term sentence. *Id*. at 861-62. The trial judge found additional aggravating facts and sentenced the defendant to the upper term of 16 years. *Id*. at 860-61. The Supreme Court reversed that disposition, concluding that the elevation of the defendant's sentence to an upper term sentence based upon judicial fact-finding denied the defendant his constitutional right to a jury trial. *See id*. at 860.

Petitioner contends here that even though *Cunningham* involved a state sentencing scheme, the decision can be read to imply the invalidity of his current sentence. In fact, petitioner's argument is not so much based on *Cunningham* as it is based on an interpretation of *Cunningham* offered by the United States District Court for the District of Massachusetts in *United States v. Griffin*., 494 F.Supp.2d 1 (2007). In *Griffin*, a case involving application of the federal sentencing guidelines, the district judge discussed *Cunningham* at length and its implications with respect to sentencing practice under the federal guidelines.

*Griffin*, of course, is not binding on this court. *Cunningham*, itself, does not purport to undermine any existing authority pertaining to the federal sentencing guidelines. And, in fact, the

Supreme Court, in *Cunningham*, took pains to distinguish the DSL from the post-*Booker* federal sentencing guidelines. Petitioner fails to establish that *Cunningham* constitutes an intervening change in the law sufficient to justify reconsideration of the issue already resolved by the Court of Appeals on petitioner's direct appeal. *See Polizzi v. United States,* 550 F.2d 1133, 1135 (9th Cir. 1976) (Claims that have already been raised on direct appeal may not be raised in a subsequent § 2255 motion absent a showing of manifest injustice or a change in law.). Accordingly, petitioner's § 2255 motion should be denied with respect to his claim of *Booker* error.

## Other Pending Motions

In addition to his § 2255 motion, petitioner has filed two other motions which must be addressed. First, petitioner filed a motion in which he seeks an order directing the government to re-file petitioner's presentence report unsealed and to produce all evidence relied upon in the preparation of the presentence report.[1] Petitioner is of the belief that the presentence report and the supporting materials are relevant to his § 2255 motion. However, petitioner fails to identify with any specificity what information he believes the presentence report might reveal that is relevant to the outcome of the claims he asserts in his § 2255 motion. Moreover, the Court has reviewed the previously submitted presentence report and is unable to identify any material necessary to the resolution of petitioner's claims. Accordingly, petitioner's motion for an order directing the government to re-file the presentence report and to produce additional evidence should be denied.

Second, petitioner filed a motion to supplement his original § 2255 motion in which he asks the Court to consider the recent United States Supreme Court case *Gall v. United States*, 128 S.Ct. 586

---

[1] The government was previously ordered to withdraw the presentence report it had originally submitted in conjunction with its answer to petitioner's § 2255 motion. (*See* Dkt. No. 15.)

REPORT AND RECOMMENDATION
PAGE - 13

(2007). Petitioner appears to assert that this case would establish that the district court erred in its calculation of the guidelines and its application of *Booker*. However, petitioner fails to make clear the precise nature of the error he believes occurred or how the Supreme Court's decision in *Gall* would entitle him to relief in this collateral proceeding. Accordingly, petitioner's motion to supplement his § 2255 motion should be denied as well.

## CONCLUSION

As none of petitioner's claims has merit, petitioner's § 2255 motion should be denied. Petitioner's motion for an order directing the government to re-file his presentence report and petitioner's motion to supplement his original § 2255 motion should be denied as well. A proposed Order accompanies this Report and Recommendation.

DATED this 16th day of April, 2008.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14